IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
|     **Plaintiff,** | |
|     v. | Case No. 15-20074-JAR |
| **GREGORY OROZCO,** | |
|     **Defendant.** | |

## MEMORANDUM & ORDER

On Monday December 12, 2016, at 9:05 a.m. the Court called this case for trial. Defendant asked for a continuance because he had not received full discovery prior to a few minutes before trial. On the morning of trial the government provided the Defendant with photographs printed off a SIM card that had been found in a small CD-sized case that had also contained methamphetamine, seized by deputy United States Marshals on February 23, 2013.[1] Although deputy Marshals had seized, removed and ultimately tested the bag of methamphetamine found in the small case, according to the government, not until Friday December 9, 2016 did the deputy Marshals discover that the case also contained three cell-phone-SIM cards and a flash drive. According to the government, the deputy Marshals did not turn the case and SIM cards over to the government; rather, the deputy Marshals filed the case and SIM cards under "personal recovered property," not as evidence. In any event, on Friday December 9, 2016 they obtained a search warrant and determined that two of the SIM cards had no content, but the third card contained more than 200 photographs. The government provided copies of the search warrant and these photographs to the Defendant on December 12, 2016, a

---

[1] The deputy Marshals seized the methamphetamine and other property on February 23, 2013, but did not arrest anyone at that time. Gregory Orozco was arrested in October 2015, some 56 months later.

few minutes before trial was to commence. The Defendant had no warning before then that there were SIM cards and photographs on the SIM cards that he had not yet discovered.[2]

The government stated that it did not intend to offer the photographs as evidence in its case; apparently the government believes this evidence is not inculpatory. The photographs depict a trip to a zoo, the birth of a baby, and children. But that does not mean the photographs lack any evidentiary value. Indeed, from the Defendant's cursory review of the photographs for several minutes before trial, he believes that the individuals in photographs are the family or associates of another person who was in the vehicle with the Defendant at the time agents seized the small case of methamphetamine.

Notably, agents seized the small case of methamphetamine from a pickup truck that was occupied not just by Defendant, but by two other individuals. The three of them were all seated in the front seat of the truck. Thus, if the SIM cards depict persons associated with another person in the car, this evidence is potentially exculpatory of the Defendant. The Defendant is charged with possession of that methamphetamine with the intent to distribute it and charged with possessing a number of firearms in furtherance of his possession with intent to distribute that same methamphetamine. Critical to those charges is the element that the Defendant knowingly and intentionally possessed the methamphetamine. But if it was secreted in a small case containing SIM cards belonging to someone else in the car, a reasonable jury might find that the methamphetamine was not possessed by the Defendant, either actually, jointly or constructively. In other words, it is quite possible that not until minutes before trial was the Defendant provided evidence that is *Brady* material.

---

[2] Meanwhile, on the morning of trial, the government also filed an Information to Establish Prior Conviction (Doc. 6) pursuant to 21 U.S.C. § 851, thereby doubling the mandatory minimums to which the Defendant is exposed.

The Defendant further sought a continuance because of late discovery of other evidence. While defense counsel discovered proffers of certain witnesses in June 2016, those were provided as "protected discovery," meaning, defense counsel could only view the proffers inside the United States Attorney's Office, and could not copy, photograph or otherwise share the proffers with the Defendant. At best, defense counsel could take notes and provide an oral summary to the Defendant of the content of those proffers. On November 21, 2016, this Court granted the Defendant's motion for unprotected discovery of these proffers, such that the Defendant could read the proffers in the presence of his defense counsel.[3] The following week, on or about November 30 or December 1, the government provided these proffers to the Defendant in accordance with the Court's order. And despite meeting with the defense counsel twice last week, for a total of six to seven hours, the Defendant needs more time to review the proffers to adequately prepare for trial. The Defendant has poor eyesight and reads slowly; and like any Defendant, when he may only review any discovery in the presence of his attorney, his opportunity to read, digest and intelligently use the information is compromised.

Moreover, two of the proffers, as well as certain grand jury transcripts, were not provided to defense counsel and thus were not available to the Defendant until December 5, seven days before trial. In fact, at the hearing on November 21, Defendant had moved for production of grand jury transcripts; the Court denied the motion as moot, based on the government's representation that this had been or was going to immediately be accomplished. But, these grand jury transcripts were not provided to the Defendant until December 5. Since the Grand Jury had returned an Indictment on September 2, 2015 and a Superseding Indictment on July 6, 2016, presumably this grand jury testimony occurred on or before July 6, yet was not disclosed to the

---

[3] Even these were provided in redacted form—the names and identifiers of those who made the proffers were redacted from the set provided to defendant for review in the presence of his defense counsel.

Defendant until seven days before trial.    In other words, Jencks Act statements and other memoranda of interviews were not fully disclosed until seven days before trial, despite being in the government's possession for many months.[4]

The Defendant was indicted on September 2, 2015, and this case was set for trial on July 19, 2016.  But, on the Defendant's motion, the Court continued the trial to December 12.  The Defendant sought a continuance back in July because

> "[o]n June 27, 2016, counsel for the Defendant was notified of a new proffer statement from a potential new witness in the case. Counsel for the Defendant reviewed the proffer at the office of the United States Attorney on June 29, 2016 for the first time.  On July 1, 2016, counsel for the Defendant met with the Defendant at CCA to discuss the proffer . . . . Substantially similar in time, the government advised counsel for the Defendant that another proffer may be forthcoming, the government did not reveal the identity of the individual at that time.[5]

The motion went on to describe how the government had indicated that still another proffer was forthcoming, but that meanwhile, the Grand Jury handed down a Superseding Indictment on July 7, 2016, the same day the Defendant filed the motion for continuance.

Today the Defendant again moves for a continuance and the government does not object. The government asked the Court to consider this an excludable period of time under the Speedy Trial Act.[6]  Under the Speedy Trial Act, certain periods of time shall be excluded, including delays resulting from: mental competency proceedings; trials with respect to other charges against the defendant; interlocutory appeals; pretrial motions- through hearing, prompt

---

[4] The Court recognizes that under the Jencks Act, 18 U.S.C. §3500, statements of witnesses, including grand jury testimony, is not required to be disclosed until after direct examination of the witness (unless the information is otherwise discoverable as *Brady* or *Giglio* information).  But, as a practical matter, this Court, like all courts, strongly encourages, if not orders the government to provide Jencks Act statements much earlier.  Not only would disclosure after direct examination result in prolonged trials, it might lead to mid-trial defense motions for investigation.  Simply put, withholding witness statements neither fosters pleas nor the efficient and effective administration of justice.

[5] Doc. 34.

[6] 18 U.S.C. § 3161.

4

disposition, or up to 30 days while the court has the matter under advisement; transfer or removal proceedings; the court's consideration of a proposed plea agreement; deferred prosecutions; absence or unavailability of an essential witness; defendant's illness or lack of mental competency; or joinder with a non-severed codefendant whose time for trial has not run- for a reasonable time.[7] None of these exceptions apply.

The court may also exclude "[a]ny reasonable period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial."[8]

The Court finds that the ends of justice are served and outweigh the best interests of the public and the Defendant in a speedy trial in this case for the following reasons. First, the Defendant just today discovered evidence that is potentially exculpatory, namely photographs from a SIM card found in the same small bag as the methamphetamine. With additional investigation, the Defendant may be able to prove that the SIM card did not belong to him, but belonged to one of the two people who were with him in the pickup truck on February 23, 2013, when deputy Marshals seized the methamphetamine and firearms.

Secondly, because of the government's unfortunate and troublesome discovery practices, the Defendant just recently discovered grand jury testimony of witnesses. And only recently did the government provide the Defendant with certain proffer statements to Defendant in a manner that allows for the Defendant to review this evidence with his attorney. This late-provided

---

[7] 18 U.S.C. § 3161(h)(1)-(6).

[8] 18 U.S.C. § 3161(h)(7)(A).

discovery is critical to Defendant's preparation for trial, whether it is inculpatory or exculpatory. Thus, the Court concludes that the interests of justice support, even require, a trial continuance.

The Court in no way blesses the above-described practices of protecting proffer statements within the United States Attorney's Office, nor providing proffer statements and/or Jencks material shortly before trial, nor providing other evidence that is potentially exculpatory *minutes* before trial. The Court recognizes that in the event a cooperating person offers a proffer shortly before trial, that may well justify a late disclosure of the proffer; but in the ordinary course, such discovery ought to be provided early and fully. It is insufficient for the government to refrain from producing discovery until "after obviously we were not going to resolve the case any other way. . . "[9] In other words, the Federal Rules of Criminal Procedure and the Speedy Trial Act do not countenance withholding discovery until the government believes the Defendant will not plead guilty.

Late-provided discovery critically compromises the defendant's ability to intelligently determine whether he should plead guilty or exercise his right to trial. And it critically compromises his right to prepare for trial. Moreover, late-provided discovery has other negative consequences beyond compromising constitutional rights. Today, the Court called 47 citizens to the courthouse for jury selection. Not only were the members of the jury pool inconvenienced, taxpayers paid $1880 ($40 each) in jury fees to them; and the Court had to release them after just 30 minutes because of this continuance.

Furthermore, the parties in *Lapham v. Watts Regulator Co.*, Case Number 14-2084-JAR, had been prepared to try their case this week. But when speedy trial considerations necessarily caused the Court to set the instant case for trial this week, the Court had to continue the *Lapham*

---

[9] Tr. December 12, 2016, p. 8.

6

trial to July 25, 2017, the earliest the Court could give them a firm trial setting, given the congestion of the Court's docket. The *Lapham* case has been pending in this Court since February 21, 2014 and has experienced a delayed trial for reasons that now prove unnecessary, given the trial continuance in this case caused by the government's discovery practices.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Gregory Orozco's motion to continue the trial is **GRANTED and the time between December 12, 2016 and January 10, 2017 is excludable time under the Speedy Trial Act.**

**IT IS ORDERED** that trial will commence on January 10, 2017 at 9:00 a.m.

Dated: December 12, 2016

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE